U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**FILED**

APR 23 2012

CLERK, U.S. DISTRICT COURT

By _____
　　　　　　Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

RONALL WAYNE HARRISON, §
aka RONALD WAYNE HARRISON,[1] §
§
Petitioner, §
§
v. § No. 4:11-CV-695-A
§
RICK THALER, Director, §
Texas Department of Criminal §
Justice, Correctional §
Institutions Division, §
§
Respondent. §

## MEMORANDUM OPINION
### and
### ORDER

This is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner, Ronall Wayne Harrison, aka Ronald Wayne Harrison, a state prisoner currently incarcerated in Iowa Park, Texas, against Rick Thaler, Director of the Texas Department of Criminal Justice, Correctional Institutions Division, respondent. After having considered the pleadings, state court records, and relief sought by petitioner, the court has concluded that the petition should be denied.

---

[1]The state court and prison records reflect petitioner's true name to be "Ronald Wayne Harrison," although the petition reflects petitioner's name to be "Ronall Wayne Harrison." As such, the court ORDERS that the clerk of court docket and change the designation of petitioner to reflect that petitioner is also known as "Ronald Wayne Harrison."

## I.  Factual and Procedural History

In 2007 petitioner was indicted for indecency with a child by contact, a second degree felony, in the 271st Judicial District Court of Jack County, Texas.  (03State Habeas R. at 81)[2] The indictment also included an enhancement paragraph alleging a prior 1994 felony conviction for burglary of a habitation in Dallas County, Texas.  (*Id.*)  On February 20, 2008, a jury found petitioner guilty of the offense, true to the enhancement allegation, and assessed his punishment at life imprisonment and a $10,000 fine.  (*Id.* at 82)  Petitioner appealed his conviction, but the Seventh District Court of Appeals of Texas affirmed the trial court's judgment, and the Texas Court of Criminal Appeals refused his petition for discretionary review.  *Harrison v. State*, No. 07-08-0155-CR, 2008 WL 4755663 (Tex. App.–Amarillo 2008) (not designated for publication); *Harrison v. State*, PDR No. 1652-08, 2009 WL 1165501 (Tex. Crim. App. 2009).  Petitioner also filed a state habeas application for writ of habeas corpus challenging his conviction, which was denied without written order by the Texas Court of Criminal Appeals on the findings of the trial court.  (03State Habeas R. at cover)  This federal

---

[2]"03State Habeas R." refers to the state court record in petitioner's state habeas application no. WR-40,355-03.

2

petition for writ of habeas corpus followed.

At trial, M.T., who was eleven years old at the time, testified that on one occasion when she was ten years old and home sick from school, petitioner, her mother's live-in boyfriend, came into her bedroom, carried her back to his bedroom, locked the bedroom door to the kitchen, and put her on top of him on the bed. (RR, vol. 2, at 214-20, 224-26) He touched her breasts under her pajama top and pushed down her pajama bottoms and touched her "private spot" and her "butt." Petitioner told M.T. that he was sorry and that he thought she was M.T.'s mother, S.T. M.T. ran out the other bedroom door to the garage, and, still in her pajamas, got on her bike and rode two blocks to the hospital where her mother worked. M.T. appeared scared and distraught and was crying when she arrived at the hospital. (*Id.* at 152-53, 175-77, 236) M.T. made an outcry to S.T., which was overheard by S.T.'s boss, who told S.T. that she needed to call the authorities or he would. (*Id.* at 152-53, 175; Clerk's R. at 51) The hospital nurse who examined M.T. stated that M.T. stated petitioner "started rubbing on her private parts while she was laying on the bed watching TV. Then he started rubbing on her chest. He pulled her pants down, started rubbing on her privates . . . . So, she tried to run

3

away, and he grabbed her arm, pulled her back, and started to try to French kiss her." (*Id.* at 235-36)  S.T. testified that her brother, Robert Johnson, and nephew, James King Jr., were also home on the date and time of the incident, who M.T. testified were sleeping at the time. (*Id.* at 173-74, 225)  S.T. also testified that petitioner was an alcoholic and that he was drunk "all the time," including the day in question. (*Id.* at 183-84, 188, 190)

### D.   ISSUES

Petitioner raises eight grounds for habeas relief, in which he complains of ineffective assistance of trial and appellate counsel (grounds one, two, seven and eight), deprivation of his right to testify and/or allocution (ground three), abuse of discretion by the trial court (ground four), failure of the court reporter to transcribe bench conferences (ground five), and prosecutorial misconduct (ground six). (Pet. 7-8, Pet'r Mem., Table of Contents)  Petitioner's grounds are multifarious and addressed as thoroughly as practicable.

### E.   RULE 5 STATEMENT

Respondent does not believe the claims presented are unexhausted, barred by limitations, or successive. (Resp't Ans. at 5)

4

### F. DISCUSSION

#### 1. Legal Standard for Granting Habeas Corpus Relief

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). A state court decision will be an unreasonable application of clearly established federal law if it correctly identifies the applicable rule but applies it unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08.

The Act further requires that federal courts give great deference to a state court's factual findings. *Hill*, 210 F.3d at 485. Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. This presumption applies to all findings, express and implied. *Valdez v. Cockrell*, 274 F.3d 941, 948 (5th Cir. 2001). The applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Typically, when the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, it is an adjudication on the merits. *Barrientes v. Johnson*, 221 F.3d 741, 779-80 (5th Cir. 2000); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).

### 2.   *Ineffective Assistance of Counsel*

Petitioner claims he received ineffective assistance of counsel at trial and on appeal. A criminal defendant has a constitutional right to the effective assistance of counsel at trial and on a first appeal as of right. U.S. Const. amend. VI, XIV; *Evitts v. Lucey*, 469 U.S. 387, 393-95 (1985); *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *Anders v. California*, 386 U.S. 738, 744 (1967). An ineffective assistance claim is governed by the familiar standard set forth in *Strickland v.*

6

*Washington.*  466 U.S. at 668.  *See also Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001) (applying the *Strickland* standard to ineffective assistance claims against appellate counsel).  To establish ineffective assistance of counsel a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different.  *Strickland*, 466 U.S. at 688.

A court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy.  *Id.* at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight.  *Id.* at 689.

Where a petitioner's ineffective assistance claims have been reviewed on the merits under the *Strickland* standard and denied by the state courts, federal habeas relief will be granted only if the state courts' decision was contrary to or involved an unreasonable application of *Strickland*, or if the state courts' decision is based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  *Bell v. Cone*, 535 U.S. 685, 698-99 (2002); *Haynes*

*v. Cain*, 298 F.3d 375, 379-82  (5th Cir. 2002).

Petitioner was represented at trial by Reginald Robert Wilson and on appeal by David A. Pearson IV.  Petitioner claims trial counsel was ineffective by failing to (1) discuss with petitioner the "advisability of accepting or rejecting" the state's plea bargain offer, and (2) seek out and interview defense witnesses (grounds one and two).  Petitioner also claims counsel was ineffective by failing to (A) request an opportunity to question a juror who revealed that he knew a prosecution witness or raise the issue in a motion for new trial, (B) preserve for appellate review challenges to two venire members, (C) object on confrontation clause grounds to hearsay admitted through the hospital nurse, (D) request a jury instruction on the lesser included offense of attempted indecency of a child, (E) present offer of proof under Texas Rule of Evidence 103 when the court denied admission of evidence to impeach the state's outcry witness S.T., (F) request a competency hearing or introduce evidence that petitioner was under psychiatric care, (G) present evidence that petitioner had been recently hospitalized and had a prolonged history of substance and alcohol abuse and to request an instruction on intoxication, (H) object to a hearing not being held before allowing the outcry witnesses to testify, (I) allow

8

petitioner to testify or be heard, (J) object to the state having recorded his telephone conversations in jail, including conversations he had with counsel, (K) object to the validity of pen packets used for enhancement during the punishment phase, (L) object to a dismissed juror returning to sit on the jury, (M) object or ask for a continuance to investigate two surprise state witnesses, (N) advise the court that he was at petitioner's home the day of the alleged incident due to petitioner's missing a court date, (O) advise the court that counsel had spoken to the outcry witness S.T., who informed counsel that petitioner was in Dallas at the time of the alleged incident, (P) have petitioner sign the proper paperwork as advised by the trial judge to appoint counsel as appellate counsel, (Q) inform petitioner of his rights concerning his appeal and by forging petitioner's signature on the trial court's certification of defendant's right of appeal, and (R) object to the state's use of an alias for the outcry witness S.T., during voir dire (ground seven). (Pet. at 7, 12-13; Pet'r Mem. 6-13, 30-34)

The state habeas judge, who also presided over petitioner's trial, conducted a hearing by affidavit on these claims. In his affidavit, trial counsel responded as follows:

I have been provided a copy of this writ, and

9

these are my responses to the claims Mr. Harrison has made:

"Counsel failed to allow applicant to make final decision on a plea bargain offered by the State or inform him of a plea offer."

I informed Mr. Harrison of every plea bargain offer which was presented to me by the State.  He rejected every plea offer I presented to him.  I have attached the same document which Mr. Harrison included in his writ, however, this is the document which he signed in his own hand expressing to me that he rejected the State's plea offer.

"Trial counsel knew about witnesses and failed to interview or investigate an eyewitness as well as key witnesses who were at the house the day in question. Counsel also failed to have subpoenas issued for witnesses or request a writ of attachment for witnesses who would have testified at trial."

I tried to interview the witnesses he provided to me.  None of them were in the community in which he said they were living and my investigator was unable to locate any of the witnesses he described as having knowledge of relevant facts.  The individual who was at the scene of the alleged crime was a teenage boy who we tried to interview before trial and tried to serve a subpoena upon during the trial.  My investigator searched at all known addresses and all known relatives for this individual, and he was not able to locate this individual nor were any members of law enforcement.

Ground seven A-R

A    I am not aware of a juror who expressed a bias against the defendant as a result of his knowledge of a witness for the State.  I was not counsel on appeal so I was not responsible for filing a motion for new trial.

10

B    I believe any challenge for cause which I made was granted by the Court.  If not, then I believe we excluded those jurors who the Court would not agree should be stricken for cause.

C    I do not recall failing to make specific objections during the trial of the case, and any evidentiary rulings which were contrary to my client's position I tried to object.

D    I am not aware of which lesser charge Mr. Harrison believes there was evidence to support a conviction.  The defense was mistake of fact.

E    Failing to present offer of proof on impeachment may be true.  I do not recall which witness he wanted impeached and other than a pending felony indictment for forgery, I do not recall offering other impeachment evidence.

F    Mr. Harrison always seemed to understand the charges against him and never expressed any doubt about his competency to go to trial.

G    The defense was mistake of fact. Intoxication is not a defense.  Other than asking the complainant whether Mr. Harrison had been drinking the days prior to the alleged offense, as part of trial strategy, I did not want the juror [sic] to believe he was drunk at the time of the offense because it was not a defense to the charge, and it could have inflamed the juror [sic] more against the defendant.

H    Failing to object to outcry without a hearing is accurate.  However, the State

had provided a summary of outcry
witnesses prior to the trial upon my
request.

I   Mr. Harrison did not testify as part of
the strategy to support a claim on
appeal of insufficiency of the evidence,
and because he had several prior
convictions with which the State could
impeach him.

J   I do not know whether the State recorded
my telephone calls with Mr. Harrison.

K   I thought I objected to any defect in
prior convictions I could find.

L   I do not believe that a dismissed juror
actually made the decision in the case.
If they did, Mr. Harrison expressed to
me that he was not opposed to that juror
sitting on his case.  We had a
discussion on each potential juror
before submitting our list to the court.

M   I did ask for a continuance when we
could not get a witness served with a
subpoena but the trial judge denied that
motion.

N   I did not advise the court that I had
telephoned Mr. Harrison's house the date
of the alleged offense.

O   I did not advise the court of the result
of any interview of the State's
witnesses.

P   Mr. Harrison was able to perfect an
appeal after I was discharged by the
Court.

Q   I did not forge any signature of the

Defendant.

R    I did not object to the use of an alias for a witness.

Ground eight

A    I was not aware that a dismissed juror had been selected to sit on the jury for Mr. Harrison.  The concept of a "dismissed juror" being allowed to sit on the jury is not consistent with the trial judge's decision to dismiss a juror.

B    I tried to call as a witness all those people whom Mr. Harrison designated.  We could not locate his witnesses, despite my investigator's best efforts, and the efforts of law enforcement in that community.

C    The trial strategy was to rely upon the presumption of innocence and preserve a factual insufficiency claim which was still a viable ground on which to appeal at the time of trial.  It has since been disallowed.

D    I was not aware that the Court Reporter did not record the entire trial of this case.

(03State Habeas R., EventDate 03/16/2011, at 8-10)

Based on his own personal recollections of counsel's actions and counsel's affidavit, the state habeas judge entered the following findings of fact and conclusions of law:

4.    Reginald Wilson informed Applicant of all plea bargain offers made by the prosecution in his case

13

prior to trial which were declined by Applicant.

5.   Reginald Wilson, with the assistance of a private
     investigator, exercised due diligence in
     investigating and attempting to locate and
     interview potential witnesses whose names were
     supplied to him by Applicant.

6.   Reginald Wilson provided reasonably effective
     representation to Applicant during the jury trial
     of his case.

7.   All decisions made by Reginald Wilson during
     Applicant's trial were matters of calculated sound
     trial strategy, and his actions during trial were
     within the zone of that required by a reasonably
     effective trial counsel.

8.   Reginald Wilson's performance as Applicant's trial
     counsel was not deficient and, therefore,
     Applicant suffered no prejudice from his
     performance at trial.

9.   Reginald Wilson's performance did not fall below
     the objective standard of reasonableness under the
     prevailing professional norms.

10.  There was no reasonable probability that the
     result of Applicant's trial would have been
     different even if Reginald Wilson's performance
     had been deficient.

11.  Reginald Wilson's decisions of trial strategy were
     not so outrageous that no competent attorney would
     have engaged in them.

12.  Applicant has failed to overcome the presumption
     that his trial counsel acted within the wide range
     of reasonable professional judgment.

13.  Reginald Wilson did not render ineffective
     assistance of counsel to Applicant during his jury
     trial under either the United States Constitution

or the Texas Constitution.

(03State Habeas R., EventDate 03/16/2011, at 6-7)   The Texas
Court of Criminal Appeals, in turn, denied habeas relief based on
these findings.

Petitioner has failed to rebut the state court's findings of
fact by clear and convincing evidence.   28 U.S.C. § 2254(e)(1).
Thus, the findings, including the court's credibility findings,
are entitled to a presumption of correctness.   *Richards v.
Quarterman*, 566 F.3d 553, 563-64 (5th Cir. 2009); *Galvan v.
Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002).   Deferring to those
findings, and having independently reviewed petitioner's claims
in conjunction with the state court records, it does not appear
the state courts' application of *Strickland* was objectively
unreasonable.

Petitioner's claims are largely conclusory with no legal
and/or evidentiary basis, refuted by the record, involve state
evidentiary rulings or other matters of state law, or involve
strategic and tactical decisions made by counsel, all of which
generally do not entitle a state petitioner to federal habeas
relief.   *See Wainwright v. Goode*, 464 U.S. 78, 83-84 (1983) ("It
is axiomatic that federal courts may intervene in the state
judicial process only to correct wrongs of a constitutional

15

dimension."); *Busby v. Dretke*, 359 F.3d 708, 715 (5th Cir. 2004)
("Strategic decisions . . . can rarely constitute ineffective
assistance of counsel, so long as they are based on reasonable
investigations of the applicable law and facts."); *Wilson v.
Cockrell*, 70 Fed. Appx. 219, 2003 WL 21672834, at *9 (5th Cir.
July 17, 2003) (where petitioner cannot show he was entitled to
lesser included offense instruction, he fails to demonstrate
ineffective assistance for failing to request such an
instruction"); *Johnson v. Puckett*, 176 F.3d 809, 820 (5th Cir.
1999) ("State evidentiary rulings do not warrant federal habeas
relief unless they violate a specific constitutional right or
render the trial so fundamentally unfair as to violate due
process."); *Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998)
("Mere conclusory allegations in support of a claim of
ineffective assistance of counsel are insufficient to raise a
constitutional issue."); *Alexander v. McCotter*, 775 F.2d 595, 602
(5th Cir. 1985) (ineffective assistance claims "based upon
uncalled witnesses [are] not favored because the presentation of
witness testimony is essentially strategy and thus within the
trial counsel's domain, and . . . speculations as to what these
witnesses would have testified is too uncertain").

Furthermore, a criminal defendant is not entitled to

16

errorless counsel, but to "counsel reasonably likely to render and rendering reasonably effective assistance." *Washington v. Watkins*, 655 F.2d 1346, 1355 (5th Cir. 1981). The record reflects counsel discussed the case with petitioner, was familiar with the facts of the case, filed pretrial motions, conveyed the state's plea offer(s) to petitioner, obtained a private investigator to investigate the case and locate potential witnesses, advised petitioner of his right not to testify, participated in voir dire, made relevant objections and motions during trial, cross-examined witnesses, called defensive witnesses during the guilt/innocence phase, and made opening and closing arguments. Petitioner has not demonstrated deficient performance or shown any reasonable probability that the outcome of his trial would have been different or that his punishment would have been significantly less harsh but for counsel's representation.

Petitioner claims appellate counsel was ineffective by failing to raise issues regarding (1) a dismissed juror sitting on the jury, (2) an uncalled and unsubpoenaed eyewitness, (3) the denial of his right to allocution, (4) the failure of the court reporter to record bench conferences, and (5) ineffective assistance of trial counsel.

17

No express findings of fact or conclusions of law were made by the state courts on these claims. Thus, this court may assume the state courts applied the *Strickland* standard to the facts of the case, absent evidence that an incorrect standard was applied, and imply fact findings consistent with the state courts' denial of relief. *Townsend,* 372 U.S. 293, 314 (1963); *Valdez,* 274 F.3d at 948 n.11; *Goodwin v. Johnson,* 132 F.3d 162, 183 (5th Cir. 1997).

Under *Strickland,* appellate counsel is not required to raise every conceivable argument urged by his client on appeal, regardless of merit. *Smith v. Robbins,* 528 U.S. 259, 287–88 (2000). It is appellate counsel's duty to assess and choose among potential issues, according to his or her professional judgment of their merits and the strategic approach being taken. *Jones v. Barnes,* 463 U.S. 745, 749 (1983).

Petitioner's first three claims, that appellate counsel should have raised issues regarding (1) a dismissed juror sitting on the jury, (2) an uncalled and unsubpoenaed eyewitness, and (3) the denial of his right to allocution, have no evidentiary basis. The record reflects trial counsel requested that juror no. 31, Cynthia Baldi, be struck for cause, however the preceding colloquy does not mention juror no. 31, and the trial court did

not grant the challenge.  (RR, vol. 2, at 126-29)  Nor does the

"Jury Panel Voir Dire Seating" chart provided by petitioner

reflect that Baldi was struck for cause or as the result of a

peremptory challenge by either party.  (RR, vol. 2, at

129;03State Habeas R., EventDate 03/30/2011 at 21)

Further, petitioner presented no credible evidence that

uncalled witnesses, specifically James King Jr. and Mildred Ann

Jay, S.T.'s nephew and sister, were available and willing to

testify on his behalf and that their testimony would have been

favorable to him.[3]

Finally, petitioner's bald assertion that counsel interfered

with his right to testify does not entitled him to relief.

Absent evidence in the record, a court cannot consider a habeas

petitioner's bald assertions on a critical issue, unsupported by

anything in the record, to be of probative value.  *Ross v.*

*Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983).  On the contrary,

the state court clearly found counsel's affidavit credible on the

issue, and the state court was in a better position to evaluate

---

[3]In support of this claim, petitioner presented the
purported "affidavit" of Mildred Ann Jay, S.T.'s sister and
M.T.'s aunt, which was not dated or notarized, and several pages
of a purported letter from Jay to petitioner, which was not
submitted in its entirety.  (Pet'r Mem., Ex. B)

counsel's credibility.

As to the remaining two claims, petitioner has not demonstrated any prejudice due to the fact that some bench conferences went unrecorded at his trial, and, as communicated by counsel to petitioner, direct appeal is generally not the appropriate forum for claims of ineffective assistance under state law.  Instead, an application for writ of habeas corpus is usually the more appropriate vehicle to raise such claims. (03State Habeas R., EventDate 03/30/2011 at 28)  *Rylander v. State*, 101 S.W.3d 107, 110-11 (Tex. Crim. App. 2003).

Because petitioner identifies no meritorious issues that counsel should have raised on direct appeal, the state courts' rejection of his claims was not contrary to or an unreasonable application of *Strickland*.

### 3.  *Right to Testify*

Petitioner claims he was never allowed to testify on his own behalf during either phase of his trial, even though he informed counsel several times before and during trial that he wanted to tell the jury as well as the court what had happened on the day in question.  (Pet. at 7; Pet'r Mem. at 14-15)  He further claims he was never asked by the court if he wanted to testify, if he knew it was his right to testify, or if he was waiving his right

20

to testify, which he did not "knowingly" do.

In a supplemental affidavit, trial counsel responded to this claim as follows:

> Mr. Harrison and I discussed the possibility of him testifying to the jury during the trial of his case. I advised him that it would not be a good idea to testify because of his lengthy criminal history, and the fact that a jury was unlikely to believe anyone who had as bad a criminal record as he had, which featured, inter alia, at least five previous felony convictions and numerous misdemeanor convictions. This was my advice to him at the time of trial, and I told him it was only advice, but the ultimate decision was up to him to make as to whether to testify in his case.
>
> He agreed with my advice, and he did not express to me at the trial that he desired to tell his story to the jury, even though I told him he could ignore my advice and testify. I did not observe Mr. Harrison stand up at trial and address the Court by stating that he wanted to testify, in spite of my advice that he should not.

(State Habeas R., EventDate 09/29/2011)[4]

No express findings of fact or conclusions of law were made by the state courts on this claim. Thus, this court may assume, where applicable, that the state courts applied correct standards of federal law to the facts, absent evidence that an incorrect standard was applied, and imply fact findings consistent with the state courts' denial of relief.

---

[4]This record is not paginated.

The right to testify is a fundamental right that is personal to the defendant; therefore, only the defendant can waive that right, voluntarily and knowingly. *Bower v. Quarterman*, 497 F.3d 459, 473 (5th Cir. 2007) (citing *Rock v. Arkansas*, 483 U.S. 44, 50, 52 (1997)); *Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997). There is no violation of the right to testify if a defendant acquiesces during trial to his attorney's recommendation that he not testify. *Jordan v. Harnett*, 34 F.3d 310, 312 (5th Cir. 1994), *vacated on other grounds*, 53 F.3d 94 (5th Cir. 1995). In this instance, the question is whether counsel's tactical decision was sound trial strategy. *United States v. Mullins*, 315 F.3d 449, 452 (5th Cir. 2002).

Further, waiver of the right may be inferred from the defendant's conduct and is presumed from the defendant's failure to testify or notify the court of his desire to do so. *United States v. Brown*, 217 F.3d 247, 258 (5th Cir. 2000); *United States v. Joelson*, 7 F.3d 174, 177 (9th Cir. 1993); *United States v. Edwards*, 897 F.2d 445, 447 (9th Cir. 1990). Upon waiver of the right, the trial court has no duty to advise the defendant of his right to testify nor is the court required to ensure that an on-the-record waiver has occurred. *Joelson*, 7 F.3d at 177.

According to counsel's affidavit, petitioner did not take

22

the witness stand because he agreed with counsel's advice. Petitioner waived his right to testify by voluntarily choosing not to testify on the advice of counsel and by failing to assert his right to testify either through his attorney or on his own during the trial. Where nothing in the trial record gave the trial court any reason to think petitioner desired to testify, the court was under no duty to explain to petitioner that he had the right to testify and was not required to verify that he waived the right voluntarily.

Because petitioner has not demonstrated that he was denied his right to testify, the state courts' denial of his claim is not contrary to, or involve an unreasonable application of, federal law on the issue or unreasonable in light of the evidence presented in the state court proceedings.

#### 4.   *Trial Court Error*

Petitioner claims the trial court abused its discretion, and thus violated his right to due process, by (A) denying a request for a continuance to locate S.T.'s nephew, James King Jr., as an eyewitness, (B) allowing a dismissed juror to return and sit on the jury, (C) having an ex parte communication with a juror in the hallway, (D) denying his right to allocution at sentencing, (E) failing to grant a motion for mistrial, (F) allowing a

prejudicial witness not on the state's witness list to testify,
(G) failing to hold a requested hearing before allowing the
state's outcry witnesses to testify, and (H) allowing S.T. to use
an alias under oath.  (Pet. at 8, 10; Pet'r Mem. at 16-20)

Save for claims (C), (E) and (F), no express findings of
fact or conclusions of law were made by the state courts on these
claims.  Thus, this court may assume, where applicable, that the
state courts applied correct standards of federal law to the
facts, absent evidence that an incorrect standard was applied,
and imply fact findings consistent with the state courts' denial
of relief.

Petitioner claims the trial court abused its discretion by
denying his motion for continuance to locate and subpoena alleged
eyewitness James King Jr. who was also living in the house at the
time in question.  (RR, vol. 2, at 247)  The decision on a motion
for continuance is within the discretion of the trial judge and
denial will justify federal habeas relief only if it is shown to
be so arbitrary as to deny the applicant a fair trial.  *Hicks v.
Wainwright*, 633 F.2d 1146, 1148 (5th Cir. 1981).  There is no
evidence of abuse of discretion.  In addition to the sheriff's
inability to locate and serve the witness subpoenas and the
defense investigator's inability to locate and interview

potential witnesses, the record contains no suggestion that anyone knew the exact whereabouts of King or whether he could have been located and compelled to appear within a reasonable time. *Fitzpatrick v. Procunier*, 750 F.2d 473, 477 (5th Cir. 1985) (upholding denial of state prisoner's habeas petition, because state prisoner, in moving for continuance, failed to show that he knew where the prospective witness was, or that he could locate that witness). *See also United States v. Costello*, 760 F.2d 1123, 1127 (11th Cir. 1985) (affirming denial of continuance partly because "[n]o one knew [the] exact whereabouts [of the prospective witness]" and "there was no positive indication that [he] could have been located and secured within a reasonable time"). Nor has petitioner shown any prejudice as a consequence of the denial of a continuance. Although petitioner claims King was an eyewitness, there is nothing in the record whatsoever to suggest that anyone other than petitioner and M.T. were present in the bedroom when the incident occurred.

Petitioner claims the trial court abused its discretion by having an ex parte communication with a juror in the hallway that was not recorded and denying his motion for mistrial. Relying solely on state law, the appellate court addressed this issue as follows:

[A]ppellant complains of the trial court's failure to grant his motion for mistrial.  That motion was made after the judge revealed to the parties that a juror had approached and informed him that the juror believed he may know someone who may be a witness.[FN1]  In lieu of asking for opportunity to examine the juror in effort to determine whether the relationship would impact his ability to be fair and impartial, appellant simply asked for a mistrial.  The latter was denied.  We overrule the issue.

FN1. The substance of the exchange between the court and counsel follows:

COURT:  Let the record reflect the Court has advised the attorneys that during the break one of the jurors approached me and stated that the prosecution had asked whether they knew one of the names of one of the prosecution's witnesses, that he didn't recognize the name.  That he knew and that he had seen a witness, that he thought he did know.  And he basically said I don't know if I can make a good juror.  Whereupon, the Court advised him that he had already been qualified and he was on the jury. Prosecution?

[STATE]:  No questions or comments.

.   .   .

[DEFENSE]:  Your Honor, I appreciate the Court bringing that information to my attention.
The defendant moves for mistrial at this time.

COURT:  All right.  I'm – I'm going to deny your motion for mistrial.

The Court finds that the – based upon the conversation, he did not recognize a name

and did not purposely withhold that
information from the Court.

It was upon viewing an individual which
may or may not be a juror in the case - I
mean, witness in the case.  I don't know if
he would know whether or not it was or was
not but at any rate, that's the Court's
ruling.

Like questions regarding the admission of
evidence, those concerning decisions to deny mistrial
are reviewed under the standard of abused discretion.
Furthermore, we note that when a juror withholds
material information during voir dire, mistrial may be
appropriate. When the information withheld is
immaterial and the record does not show that the
defendant was denied an impartial jury or a fair trial,
denying mistrial is not error. Additionally, a juror's
mere familiarity with a witness is not necessarily
material information.  Its materiality depends upon
whether the nature of the relationship carries with it
a potential for bias or prejudice sufficient to warrant
the juror's exclusion from the panel.

Here, all we have before us is evidence that a
juror recognized someone in the hall outside the
courtroom.  Missing is evidence illustrating whether
the individual actually was a potential witness or
merely a spectator.  Undoubtedly, that could affect our
analysis of the issue.  So too do we lack any record
developing the extent of the juror's relationship with
that person.  That too could influence how we view the
impact, if any, of the relationship upon the juror's
deliberations.  Again, appellant simply asked for a
mistrial.  Neither litigant made effort to investigate
or develop the situation, according to the record
before us.  Given this, we cannot say that appellant
illustrated the relationship in question was material
in any way.

*Harrison*, 2008 WL 4755663, at *2 (citations omitted).

Petitioner has failed to demonstrate that the state court's adjudication of the issue is contrary to, or involves an unreasonable application of, federal law or unreasonable given the evidence presented in the state court proceedings. Ex parte communications between judge and jury may violate a defendant's due process rights. *United States v. Gagnon*, 470 U.S. 522, 526 (1985). However,

> the mere occurrence of an ex parte conversation between a trial judge and a juror does not constitute a deprivation of any constitutional right. The defense has no constitutional right to be present at every interaction between a judge and a juror, nor is there a constitutional right to have a court reporter transcribe every such communication.

*Id.* (quoting *Rushen v. Spain*, 464 U.S. 114, 125-26 (1983)). When an ex parte communication relates to some aspect of the trial, however, the trial judge generally should disclose the communication to counsel for all parties. *Foy v. Donnelly*, 959 F.2d 1307, 1317 (5th Cir. 1992).

On federal habeas review, a court must determine whether ex parte communications between the judge and a juror "had a prejudicial effect on the defendant and rendered the trial 'fundamentally unfair.'" *Moore v. Knight*, 368 F.3d 936, 940 (7th Cir. 2004). A proceeding "is fundamentally unfair if there is a reasonable probability that the [outcome] might have been

28

different had the [proceeding] been properly conducted." *Foy v. Donnelly*, 959 F.2d 1307, 1317 (5th Cir. 1992).

In this case, there is no reason to believe that, had petitioner been present at the judge's discussion with the juror, the result of the trial would have been different. Although the trial judge reported the substance of his conversation with the juror to the parties, on this record it is impossible to determine whether petitioner would have gained anything by being present for the exchange or whether he was prejudiced by the unrecorded ex parte communication. Consequently, petitioner cannot demonstrate his trial was rendered fundamentally unfair as a result of the ex parte communication.

Petitioner claims the trial court abused its discretion by denying him his right to allocution at sentencing as required by federal and state law. Federal habeas corpus review encompasses errors of constitutional magnitude. Thus, when a federal court considers whether to grant habeas corpus relief, the decision is limited to deciding whether the conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. §§ 2254, 2241; *Rose v. Hodges*, 423 U.S. 19, 21 (1975) (per curiam).

To the extent petitioner asserts a violation of state law

under article 42.07 of the Texas Code of Criminal Procedure, no ground for federal habeas relief is presented.  TEX. CODE CRIM. PROC. ANN. art. 42.07 (Vernon 2006).  It is well settled that federal habeas relief does not lie for errors of state law. *Swarthout v. Cooke*, — U.S. —, 131 S. Ct. 859, 861 (2011); *Fuller v. Johnson*, 158 F.3d 903, 908 (5th Cir. 1998).  Furthermore, the right to allocution is not a right granted or protected by the federal constitution, and its denial presents no cognizable federal habeas issue.  *United States v. Reyna*, 358 F.3d 344, 349 (5th Cir. 2004) ("[T]he right of allocution is deeply rooted in our legal tradition and an important, highly respected right; nonetheless it is neither constitutional nor jurisdictional.").

Petitioner claims the trial court abused its discretion by allowing a prejudicial witness not on the state's witness list to testify during the punishment phase.  Specifically, petitioner complains that a deputy for the Jack County Sheriff's Department was permitted to testify regarding petitioner's out-of-court statement that "they wouldn't find him guilty, because if he could make eye contact with the victim they wouldn't find him guilty."  Relying solely on state case law and state evidentiary rules, the appellate court addressed the issue as follows:

[A]ppellant questions whether the trial court

erred in overruling his Rule 403 objection. That objection was directed at the testimony of a deputy sheriff who purportedly heard appellant state, several months before trial, that if he could make eye contact with the child victim, he would not be found guilty. We overrule the issue.

The decision to admit evidence is reviewed under the standard of abused discretion. And, such an abuse occurs only when the decision falls outside the zone of reasonable disagreement. Next, Rule 403 of the Texas Rules of Evidence permits the exclusion of relevant evidence when its probative value is substantially outweighed by the danger of unfair prejudice. Here, appellant argues that the evidence in question was prejudicial and had little probative value. Yet, one can reasonably interpret the comment overheard by the deputy as a threat of intimidation directed towards the child victim in effort to prevent her from testifying. It has long been recognized that effort by a defendant to prevent a witness from testifying is generally admissible as conduct showing a consciousness of guilt, which conduct tends to prove commission of the offense. Being evidence of a consciousness of guilt, appellant's utterance was both relevant and probative, especially since the conviction rested in large part on the testimony of the victim he proposed to intimidate. And, while the statement is prejudicial, it is not unfair. That is, it does not give rise to the type of prejudice contemplated by Rule 403, such as prejudice arising from emotion or bias. Rather, the chance of harm it posed is no different than the harm posed by any other admissible evidence illustrating guilt. So, after considering it within the framework discussed in *Montgomery v. State*, we cannot say that the trial court's decision to admit the statement fell outside the zone of reasonable disagreement.

*Harrison*, 2008 WL 4755663, at * 1 (citations omitted).

Petitioner has failed to demonstrate that the state court's

determination is contrary to, or involves an unreasonable

31

application of, federal law on the issue or is unreasonable in light of the evidence presented in the state court proceedings. Furthermore, a state court's evidentiary rulings justify the granting of habeas relief only if they violate a specific constitutional right or render the trial fundamentally unfair. *Johnson v. Puckett*, 176 F.3d 809, 820 (5th Cir. 1999). Petitioner has demonstrated neither requirement.

Petitioner claims the trial court abused its discretion by not holding a hearing under article 38.072 of the Texas Code of Criminal Procedure, as requested, before allowing the state's outcry witnesses to testify and by allowing S.T. to use an alias under oath. (Pet. at 10; Clerk's R. at 26-27) Under article 38.072, in a prosecution for prohibited sexual contact, a statement made by a child to an adult regarding the alleged offense is not inadmissible hearsay if, 14 days before the trial, the party intending to offer the statement notifies the adverse party of its intention to do so; provides the name of the witness through whom it intends to offer the statement and provides the adverse party with a summary of the statement. TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(a)-(b) (Vernon Supp. 2010). In addition, the trial court must find, in a hearing conducted outside the presence of the jury, that the statement is reliable,

based on the time, content and circumstances of the statement and the child must testify or be available to testify. *Id.* § 2(b)(2).

To the extent petitioner asserts a violation of article 38.072 of the Texas Code of Criminal Procedure, no ground for federal habeas relief is presented. As previously noted, federal habeas relief does not lie for errors of state law. *Swarthout*, 131 S. Ct. at 861; *Fuller*, 158 F.3d at 908. Moreover, the record shows that the state gave notice of its intent to use outcry witness testimony to petitioner's trial counsel, who neither requested a hearing on the reliability of the statements nor objected to their testimony on this basis. (03State Habeas R., EventDate 03/16/2011, at 9)

Because petitioner has not demonstrated abuse of discretion on the part of the trial court, the state courts' denial of his claims is not contrary to, or involve an unreasonable application of, federal law on the issues or unreasonable in light of the evidence presented in the state court proceedings.

### 5. *Reporter's Record*

Petitioner claims the court reporter failed to record or transcribe twenty-three bench conferences during trial as required by 28 U.S.C. § 753(b) and Texas Rule of Appellate

Procedure 13.1(a).    (Pet. at 10; Pet'r Mem. at 21-22)

No express findings of fact or conclusions of law were made by the state courts on this claim.  Thus, this court may assume, where applicable, that the state courts applied correct standards of federal law to the facts, absent evidence that an incorrect standard was applied, and imply fact findings consistent with the state courts' denial of relief.

To the extent petitioner relies on 28 U.S.C. § 753(b), the federal statute does not apply to state court proceedings. Further, to the extent petitioner relies on Texas Rules of Appellate Procedure, no ground for federal habeas relief is presented.  Federal habeas relief does not lie for errors of state law.  *Swarthout*, 131 S. Ct. at 861; *Fuller*, 158 F.3d at 908.  Moreover, barring a showing that the alleged violation resulted in "actual prejudice," habeas relief is unwarranted. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

Petitioner generally claims "several of the unrecorded conferences were followed by objections being sustained, [and] rulings of importance were made during the unrecorded conferences allowing the court to improperly restrict the petitioner's right to make further objections during the course of the trial." (Pet'r Mem. at 22) Because petitioner fails to assert specific

facts explaining why the alleged error prejudiced the outcome of his trial, his claim is without merit.  The state courts' denial of his claim is not contrary to, or involve an unreasonable application of, federal law on the issue nor is it unreasonable in light of the evidence presented in the state court proceedings.

### 6. Prosecutorial Misconduct

Petitioner claims the state engaged in prosecutorial misconduct by (A) failing to disclose impeachment evidence as requested by the defense, (B) giving explicit personal assurances to the jury as to the truthfulness of M.T.'s testimony, (C) violating its own motion in limine, (D) dismissing the only Hispanic on the jury, thus depriving him of a fair cross-section of the community, (E) failing to provide a list of all witnesses it intended to call at trial, and (F) having the Sheriff's Department record his telephone calls, including conversations he had with his attorney.  (Pet. at 11; Pet'r Mem. at 23-29)

No express findings of fact or conclusions of law were made by the state courts on these claims.  Thus, this court may assume, where applicable, that the state courts applied correct standards of federal law to the facts, absent evidence that an incorrect standard was applied, and imply fact findings

consistent with the state courts' denial of relief.

Petitioner claims the state committed prosecutorial misconduct by failing to disclose or produce the criminal arrest record of S.T. for impeachment purposes, failing to disclose evidence there had been a prior criminal offense committed by someone other than himself against the victim and that no criminal charges against that person were pursued, and introducing S.T.'s perjured testimony that her brother, Robert Johnson, was at the house on the day in question to babysit M.T.

There are three elements to a *Brady* prosecutorial misconduct claim:  (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) that evidence must have been suppressed by the state, either willfully or inadvertently; and (3) the evidence must be material, *i.e.,* prejudice must have ensued from its nondisclosure.  *Banks v. Dretke*, 540 U.S. 668, 691 (2004); *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).  Evidence is material under *Brady* where there exists a "reasonable probability" that had the evidence been disclosed the result at trial would have been different.  *Banks*, 540 U.S. at 698-99.  A reasonable probability of a different result is shown when the government's evidentiary suppression undermines confidence in the

outcome of the trial.  *Kyles v. Whitley*, 514 U.S. 419, 434 (1995).

Petitioner was aware at the time of trial that S.T. had been indicted on unrelated criminal charges, thus no *Brady* violation occurred.  Furthermore, the fact that a witness has been arrested or indicted is normally inadmissible for impeachment purposes under state law.  *Smith v. State*, 516 S.W.2d 415, 420 (Tex. Crim. App. 1974).

Petitioner claims the state failed to disclose evidence there had been a prior criminal offense committed by someone other than himself against the victim and that no criminal charges against that person were pursued, however he presented no evidence in the state courts that M.T. had accused someone other than himself of sexually assaulting her or that the state was aware of any such allegations.  Moreover, it is likely that any such evidence would have been inadmissible under the Texas Rape Shield Statute.  TEX. R. EVID. 412.

Finally, petitioner claims the state introduced perjured testimony from S.T. that her brother Robert Johnson was at the house on the day in question to babysit M.T., when in fact he testified he never babysat M.T.  (Pet'r Mem. at 24; RR, vol. 2 at 172-73)  "The Due Process Clause of the Fourteenth Amendment

forbids the State from knowingly using perjured testimony." *Knox v. Johnson*, 224 F.3d 470, 477 (5th Cir. 2000). To grant habeas relief on false testimony grounds, petitioner must show that "(1) the evidence was false, (2) the evidence was material, and (3) the prosecution knew that the evidence was false." *Nobles v. Johnson*, 127 F.3d 409, 415 (5th Cir. 1997).

S.T. testified that she called Robert Johnson to come to the house and watch the kids on the day in question because they were sick. (RR, vol. 2, 172-73) M.T. testified that Robert was in the house on the day in question but was sleeping when the incident occurred. (RR, vol. 2, at 225) Johnson, who suffers from a speech impediment and "split personality," testified that although S.T. asked him to babysit M.T., he never did. He stated that he did go over to S.T.'s house and had gone over to sleep. (*Id.* at 245-46) Petitioner presented no evidence in the state habeas proceedings suggesting that the state knew S.T.'s testimony was inaccurate, or even potentially inaccurate, at the time the testimony was elicited. Nor does the record establish that the state should have known that the testimony was false or misleading. Contradictory testimony from witnesses does not, standing alone, establish perjury. *Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990); *United States v. Martinez-Mercado*, 888

F.2d 1484, 1492 (5th Cir. 1989).  In the absence of any showing
other than the mere fact that an apparent contradiction entered
the testimony, petitioner has not shown that S.T. committed
perjury or that the prosecution knowingly elicited false
testimony.

Petitioner claims the state prosecutor "gave explicit
personal assurances to the jury as to the truthfulness of
[M.T.]'s testimony," by arguing:  "You heard the truth," "She
told you the truth," "You heard the truth straight out of her
mouth," and "We know it's the truth that's why we have you here."
(RR, vol. 3, at 28-30)  A federal habeas petitioner who claims
that the prosecutor engaged in improper jury argument has the
burden of establishing that the prosecution's argument was
improper and that such argument was so prejudicial that it
rendered the trial fundamentally unfair.  *Rushing v. Butler*, 868
F.2d 800, 807 (5th  Cir. 1989).  To establish that a prosecutor's
remarks are so inflammatory as to prejudice the substantial
rights of a defendant, the petitioner must demonstrate either
persistent and pronounced misconduct or that the evidence was so
insubstantial that, in probability, but for the remarks no
conviction would have occurred.  *Felde v. Blackburn*, 795 F.2d
400, 403 (5th Cir. 1986).

Under state law, when the prosecutor attaches a personal belief to the credibility of a witness, the effect is to bolster the credibility of the witness with unsworn testimony, which is improper. *Robillard v. State*, 641 S.W.2d 910, 912 (Tex. Crim. App. 1982). However, if the state's argument falls within one of four permissible categories, it does not constitute error. *Johnson v. State*, 987 S.W.2d 79, 84 (Tex. App.-Houston [14[th] Dist.] 1998, pet. ref'd). In this case, the prosecutor's remarks were permissible, even though they may have served to bolster its case, because the remarks were in response to the defense's attack upon M.T.'s credibility. (RR, vol. 3 at 25-26) *United States v. Washington*, 44 F.3d 1271, 1278 (5th Cir.1995). Even if the remarks were inadmissible, assuming the jury believed the testimony of the state's witnesses, there was substantial evidence to support petitioner's conviction.

Petitioner claims the state violated its own Motion in Limine during voir by referring to "the relationship between the defendant and the victim, specifically that the defendant was the mother's boyfriend or that [the] victim called the defendant "dad" and/or "the age or age range of the victim in this case." (Pet'r Mem. at 26-27; Clerk's R. at 61) Having reviewed the state's voir dire, in its entirety, including the record

40

citations referenced by petitioner, the record refutes his claim.

Petitioner claims the state engaged in prosecutorial misconduct by using a peremptory strike on the only Hispanic on the venire panel, venire person number 17, thus depriving him of a fair cross-section of the community. (Pet'r Mem. at 26-27; Clerk's R. at 81) The exercise of peremptory challenges in a racially discriminatory manner violates the Equal Protection Clause of the Fourteenth Amendment. *Batson v. Kentucky*, 476 U.S. 79 (1986). *Batson* established a three-part analysis for a defendant claiming racial discrimination in the prosecutor's use of peremptory challenges: "(1) a defendant must make a prima facie showing that the prosecutor exercised his peremptory challenges on the basis of race; (2) the burden then shifts to the prosecutor to articulate a race-neutral reason for striking the juror in question; and (3) the trial court must determine whether the defendant carried his burden of proving purposeful discrimination." *Moody v. Quarterman*, 476 F.3d 260, 266 (5th Cir. 2007).

Petitioner did not object to any of the state's peremptory strikes. (RR, vol. 2, 130-31) A petitioner does not make out a prima facie case just by demonstrating that the jury was not diverse. *Soria v. Johnson*, 207 F.3d 232, 239 (5th Cir. 2000)

41

(finding that a defendant must prove discrimination by more than the sole fact that minority venire persons struck); *Lockett v. Anderson*, 230 F.3d 695, 707 (5th Cir. 2000) ("[M]ere cognizance of racial identity does not necessarily establish, or even imply, racial discrimination."). Petitioner failed to carry his burden simply by pointing out that the jury contained no minority members.

Petitioner claims the state engaged in prosecutorial misconduct by failing to provide a list of all witnesses it intended to call. (Pet'r Mem. at 27-28; Clerk's R. at 60) Specifically, he complains that the state called Peggy Ferrell and Lindy Page, who were not on its witness list. As previously noted, Ferrell, a jailor at the Jack County jail, testified during the guilt/innocence phase that she overheard petitioner make the statement that "they wouldn't find him guilty, because if he could made eye contact with the victim they wouldn't find him guilty." (RR, vol. 2, at 156, 162) Page, chief deputy with the Jack County Sheriff's Department, testified during the punishment phase that petitioner's fingerprints matched those on pen packets from the Texas Department of Criminal Justice, Correctional Institutions Division. (RR, vol. 3, at 36-49)

Generally, "[t]he prosecution's failure to comply with state

rules requiring the disclosure of witnesses does not warrant habeas corpus relief in every case." *Hardin v. Wainwright*, 678 F.2d 589, 591 (5th Cir. 1982). "The omission must result in the defendant's attorney being 'manifestly surprised' before it gives rise to a constitutional defect in the proceedings." *Id.*

The clerk's record in this case does not reflect the state's witness list was designated for inclusion in the record on appeal; thus, it is impossible to determine whether Ferrell and Page appeared on the list. The record does reflect that petitioner's trial counsel objected to Ferrell testifying, but is silent as to whether the objection was based on surprise. (RR, vol. 2, at 156-57) Furthermore, counsel had prior knowledge that the prosecutor intended to introduce evidence of petitioner's repeat felony offender status during the punishment phase and so was not surprised by Page's testimony.

Finally, petitioner claims the state engaged in prosecutorial misconduct by having the Jack County Sheriff's Department record his telephone calls, including conversations he had with his attorney, thus, giving "the prosecution a blueprint for the defenses trial strategy." (Pet'r Mem. at 29 & Ex. C; 03State Habeas R., EventDate 03/30/2011, at 18) The record reflects petitioner borrowed this claim from trial counsel, who

43

advised petitioner in a letter dated April 16, 2009, as follows:

> I am not an appellate wiz like some other guys in the law practice, or maybe some of the guys at Allred, but if you are able to file an 11.07 writ, I think you may have a claim that your rights were infringed by the Jack County Sheriff's Department and the District Attorney by tape recording your conversations with your attorney.  I also believe that you may be able to claim that they tape recorded conversations we had together while working on your case at the jail.  There will be a need to show harm for this claim.  Your harm would be that the sheriff provided these recorded conversations between you and your lawyer to the DA who had a blueprint for your trial strategy which gave them an unfair advantage at trial.  How would the State of Texas feel if defense counsel was provided taped conversations between the prosecutor and their witnesses?  I assure you that they would not like it.  It violates all principles of fairness within the justice system for the other party to listen to confidential communications of the other party and their attorney.  There will be a lot of resistance to this claim from the DA, but you need to subpoena their records and the sheriff to show their capacity to tape record conversations on the telephone and elsewhere in the jail, and that they provided these to the DA, because we know that they sent conversations between you and [S.T.] to the DA.  I suspect the same of our telephone conversations.  Which they will deny.

(03State Habeas R., EventDate 03/30/2011, at 18)

The record supports petitioner's contention that one or more of his conversations with S.T. were recorded and handed over to the DA, but nothing in the record supports his contention that his conversations with counsel were recorded and handed over to the state.  Indeed, trial counsel admittedly did not know whether

the state recorded his telephone calls with petitioner.   (03State
Habeas R., EventDate 03/16/2011, at 9)

Furthermore, inmates have a substantially reduced right of
privacy while incarcerated.   *Hudson v. Palmer*, 468 U.S. 517,
527-28 (1984) ("A right of privacy in traditional Fourth
Amendment terms is fundamentally incompatible with the close and
continual surveillance of inmates . . . to ensure institutional
security and internal order.")   Petitioner presented no evidence
of the Jack County jail's policies regarding the recording of an
inmate's nonlegal and attorney/client calls or whether he
received notice that inmate calls would be monitored and
recorded.   Petitioner has failed to present any basis for
concluding that he had a legitimate expectation of privacy when
making telephone calls from the jail telephone or that the jail's
policies in this regard are not justified or otherwise
unconstitutional.   *See Bell v. Wolfish*, 441 U.S. 520, 546 (1979);
*United States v. Friedman*, 300 F.3d 111, 123 (2d Cir. 2002);
*United States v. Sababu*, 891 F.2d 1308, 1329 (7th Cir. 1989).
Mere conclusory allegations do not raise a constitutional issue
in a habeas proceedings.   *Ross*, 694 F.2d at 1011-12.

Because petitioner has not demonstrated prosecutorial
misconduct, the state courts' denial of his claims is not

contrary to, or involve an unreasonable application of, federal law on the issues or unreasonable in light of the evidence presented in the state court proceedings.

For the reasons discussed herein,

The court ORDERS the petition of petitioner for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby, denied.

Pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure, Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Court, and 28 U.S.C. § 2253(c), for the reasons discussed herein, the court further ORDERS that a certificate of appealability be, and is hereby, denied, as petitioner has not made a substantial showing of the denial of a constitutional right.

SIGNED April 23, 2012.

JOHN McBRYDE
UNITED STATES DISTRICT JUDGE